UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MARIA DEL TORO-CHACON, | ) | Case No. C05-1861-RSL-MJB |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL CHERTOFF, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## I.  INTRODUCTION

Petitioner Maria Del Toro-Chacon is a native and citizen of Mexico who is currently in the custody of the U.S. Immigration and Customs Enforcement ("ICE").  On November 9, 2005, she filed, through counsel, a habeas corpus petition pursuant to 28 U.S.C. § 2241, and a motion for temporary restraining order ("TRO"), challenging her continued detention.  (Dkt. #1 and #2). Petitioner requests that this Court issued an order granting her release from custody, or, in the alternative, directing a bond hearing before a neutral adjudicator.  (Dkt. #2).  Respondents oppose petitioner's motion, arguing that the Court lacks jurisdiction to review the discretionary decision by ICE to detain petitioner pending her petition for review with the Ninth Circuit Court of Appeals.  Respondents further argue that petitioner has failed to establish any constitutional or statutory infirmity in ICE's decision to detain her.  (Dkt. #9).

Having reviewed the entire record, I recommend that the Court GRANT petitioner's motion for preliminary injunction.  (Dkt. #2).

REPORT AND RECOMMENDATION
PAGE -1

## II. BACKGROUND

Petitioner Maria Del Toro-Chacon is a native and citizen of Mexico. (Dkt. #1 at 3). In 1992, she illegally entered the United States without inspection. Petitioner states that she fled to the United States because of concern for her family's safety as a result of a vendetta against her family by another family. (Dkt. #1 at 3). Petitioner is a single mother of two school-aged children.

On August 9, 1992, King County Police Officer Christopher Badker stopped an automobile operating without a rear license plate light. (Dkt. #9, Ex. 1). Upon approaching the vehicle, Officer Badker observed that "the left rear quarter window was broken out, the steering column cover was broken off, and a bag similar to a rifle bag was lying on the rear seat." Officer Badker also learned that the vehicle was reported stolen. The occupants of the vehicle, including petitioner, were removed from the vehicle and subjected to a "pat-down," due to the stolen vehicle report and observation of a rifle bag. During the search, Officer Badker discovered a golf-ball size bag containing white powder and a scale covered with a white powder residue. A subsequent search of petitioner's "fanny pack" resulted in Officer Badker discovering two additional bags containing a hard black tar substance, later found to contain heroin. *Id.* On August 15, 1997, petitioner was convicted in the Superior Court of Washington for King County of attempted possession of heroin, and was sentenced to five days in prison.[1] (Dkt. #11, Ex. 3).

On September 6, 2000, petitioner was arrested at her place of residence during "Operation Conquistador," a major operation involving agents from the Drug Enforcement Administration ("DEA"), the former Immigration and Naturalization Service ("INS"), and the Seattle Police Department, targeting an international heroin trafficking organization. (Dkt. #9, Ex. 3). Petitioner was not a target of the investigation but was turned over to immigration officials due to her unlawful status in the United States. (Dkt. #9, Ex. 3). Petitioner cooperated with agents

---

[1] On November 18, 2005, petitioner obtained an expungement of her 1997 conviction by the Superior Court of Washington for King County. (Dkt. #11, Ex. 1).

REPORT AND RECOMMENDATION
PAGE -2

01  by providing information on her brother's residence, leading to his arrest and conviction. (Dkt.

02  #2 at 3). Petitioner was subsequently permitted to voluntarily depart the United States in lieu of

03  being placed in removal proceedings. *Id*.

04      On July 30, 2001, petitioner was encountered by immigration officials after she

05  voluntarily departed the United States and illegally reentered on September 26, 2000. (Dkt. #9,

06  Ex. 4). Petitioner was served with a Notice to Appear, charging her with removability under

07  INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), because she was an alien present in the

08  United States without being admitted or paroled. (Dkt. # 9, Ex. 6). Petitioner admitted the

09  allegations contained in the Notice to Appear and conceded removability. (Dkt. #9, Ex. 7). As

10  relief from removal, however, petitioner applied for asylum, withholding of removal, and

11  protection under the Convention Against Torture ("CAT"). (Dkt. #9, Ex. 8). Petitioner sought

12  relief based on the following:

13      My sister Blanca's son's father, Guadelupe Castrejon-Mendoza, killed another man in
        Mexico in 1989. He then ran away and abandoned my sister and her son. She stayed
14      three days with our parents, and then we all left and went to live with our uncle in
        another city because we were afraid of the parents of the dead man, that they would
15      retaliate against Blanca and her son for what her son's father did. We lived with our
        uncle for about two years. Then someone told our father to tell Blanca to be really
16      careful because the people started to say that they were going to take revenge, and they
        wanted to kill her son, because they wanted Blanca to feel the same way they felt in
17      losing their son. Other neighbors of our parents said the same thing, that they heard that.
        We were so afraid of what would happen that we ran away to the United States. They
18      still say that they are going to seek revenge, even up to now, and that's why we never
        go back to Mexico to visit our parents, because we are so afraid. I am afraid for myself
19      and my son, because I look like my sister and our sons look alike, too. Even the INS
        officer who arrested us got us mixed up.
20

21  (Dkt. #9, Ex. 8 at 5).

22      On January 16, 2002, the Immigration Judge ("IJ") denied her applications for asylum,

23  withholding from removal, and protection under the CAT, but granted her voluntary departure

    until March 16, 2002, on the posting of a $500 voluntary departure bond. (Dkt. #9, Ex. 7).
24

25      Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On

26  October 1, 2002, the BIA affirmed the IJ's decision without opinion. (Dkt. #9, Ex. 9). On

    October 29, 2002, petitioner timely filed, *pro se*, a petition for review and motion for stay in the

REPORT AND RECOMMENDATION
PAGE -3

01 Ninth Circuit. (Dkt. #9, Ex. 10). On April 16, 2003, the Ninth Circuit granted petitioner's

02 motion for a stay of removal pending the adjudication of her petition for review. On October 31,

03 2003, attorney Kaaren Barr filed a notice of appearance, and the Ninth Circuit set a briefing

04 schedule, which was later extended to January 26, 2004. On March 10, 2004, the Ninth Circuit

05 dismissed petitioner's appeal because her attorney had failed to file an opening brief. Petitioner's

06 attorney did not notify petitioner that she had failed to file an opening brief or that her appeal had

07 been dismissed.

08      On October 18, 2005, ICE officers arrested petitioner at her place of employment. On

09 October 20, 2005, following her apprehension by ICE, petitioner filed an emergency motion to

10 reinstate her petition for review with the Ninth Circuit, and requested a stay of removal. The

11 same day, the Ninth Circuit granted petitioner's motion for stay of removal and reinstated her

12 petition for review. (Dkt. #1, Ex. 1). Petitioner's appeal remains pending with the Ninth Circuit.

13      On October 26, 2005, petitioner submitted a written request to ICE Field Office Director

14 A. Neil Clark that she be released from custody on her own recognizance. (Dkt. #9, Ex. 11). On

15 November 3, 2005, Mr. Clark denied petitioner's request for release, taking the position that

16 petitioner is a flight risk and a danger to the community. Mr. Clark stated that,

17
18     Ms. Del Toro's habitual disregard for the law and the history of subterfuge provides no assurance that she will comply with the conditions of release and she poses a significant flight risk. Moreover, her criminal record relating to Heroin trafficking
19     clearly evidences her danger to the community. For these reasons, Ms. Del Toro will not be released.

20 (Dkt. #9, Ex. 12).

21      On November 9, 2005, petitioner submitted the instant habeas petition and motion for

22 TRO. (Dkt. #1 and #2). The Court determined that petitioner had not demonstrated, as required

23 by Rule 65(b), that she would suffer immediate and irreparable injury, loss, or damage before

24 respondents could be heard in opposition. Accordingly, the Court construed petitioner's motion

25 as a preliminary injunction, rather than as one for TRO, and directed respondents to file a

26 response. (Dkt. #3).

REPORT AND RECOMMENDATION
PAGE -4

01

III.  <u>DISCUSSION</u>

02

A.   <u>Preliminary Injunction Standard</u>.

03

The basic function of a preliminary injunction is to preserve the *status quo ante litem*

04 pending a determination of the action on the merits.  *Los Angeles Memorial Coliseum Comm'n*

05 *v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).  In determining whether to

06 grant a temporary restraining order or a preliminary injunction, the Ninth Circuit considers: (1)

07 the likelihood of success on the merits; (2) the possibility of irreparable injury to a plaintiff if an

08 injunction is not granted; (3) the extent to which the balance of hardships favor plaintiff; and (4)

09 whether the public interest will be advanced by the injunction.  *See, e.g., Los Angeles Mem'l*

10 *Coliseum Comm'n*, 634 F.2d at 1200.  The analysis is often compressed into a single continuum

11 where the required showing of merit varies inversely with the showing of irreparable harm.  *See*

12 *Prudential Real Estate Affiliates, Inc. v. PRP Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000).  The

13 moving party may meet its burden by demonstrating either: (1) a probability of success on the

14 merits and the possibility of irreparable injury; or (2) that serious legal questions are raised and

15 the balance of hardship tips sharply in petitioner's favor.  *Los Angeles Mem'l Coliseum Comm'n*,

16 634 F.2d at 1201.

17

Respondents argue that petitioner seeks not to preserve the status quo – her present

18 detention – but to change it, by compelling ICE to release her from custody notwithstanding its

19 determination that she should remain in custody.  (Dkt. #9 at 7).  Respondents argue that

20 petitioner actually seeks a mandatory preliminary injunction that goes well beyond maintaining

21 the status quo *pendente lite*, and thus the court should be extremely cautious about issuing a

22 preliminary injunction and should not grant relief unless the facts and the law clearly favor the

23 petitioner.  *Committee of Central American Refugees v. Immigration and Naturalization Serv.*,

24 795 F.2d 1434, 1441 (9th Cir. 1986).

25

Petitioner's order of removal became administratively final on October 1, 2002, by virtue

26 of the BIA's summary affirmance of the IJ's January 16, 2002 decision.  Although she initially

sought review of the BIA's decision by the Ninth Circuit, her appeal was dismissed on March

REPORT AND RECOMMENDATION
PAGE -5

01  10, 2004.  On October 18, 2005, ICE arrested petitioner pursuant to a final order of removal, and

02  on November 3, 2005, ICE denied petitioner's request for release from detention. On November

03  9, 2005, petitioner filed the instant action seeking an injunction to compel ICE to release her

04  from detention, or, in the alternative, to compel an IJ to hold an individualized bond hearing.

05  Accordingly, an injunction would not maintain the status quo.  Instead, it would command

06  respondents to take affirmative action.  The Court therefore concludes that petitioner seeks a

07  mandatory injunction, and her request is subject to a higher degree of scrutiny because such relief

08  is "particularly disfavored." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)(citing

09  *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1976)).

10          B.      <u>Subject Matter Jurisdiction</u>.

11          As a preliminary matter, the parties dispute the statutory provision under which petitioner

12  is held.  Respondents argue that petitioner wrongly assumes that the basis for her detention is

13  INA § 236, 8 U.S.C. § 1226, which governs "pre-removal" detention.  Respondents assert that

14  INA § 241, 8 U.S.C. § 1231, which governs "post-order" detention, is applicable because

15  petitioner allowed her Ninth Circuit appeal to lapse, leading to dismissal on March 10, 2004.

16  According to respondents, the "removal period" had begun despite the reinstatement of her

17  petition for review and stay of removal by the Ninth Circuit, and therefore, petitioner's custody

18  is under the authority of INA § 241.  Petitioner contends that because she appealed the BIA's

19  decision to the Ninth Circuit, and because the Ninth Circuit issued a stay of her removal, her

20  detention is governed by INA § 236.

21          INA § 241(a)(1)(B) provides that:

22          The *removal period* begins on the latest of the following:
            (i) The date the order of removal becomes administratively final.
23          (ii) *If the removal order is judicially reviewed and if a court orders a stay of the
            removal of the alien, the date of the court's final order.*
24          (iii) If the alien is detained or confined (except under an immigration process), the
            date the alien is released from detention or confinement.
25
26  8 U.S.C. § 1231(a)(1)(B)(emphasis added).

REPORT AND RECOMMENDATION
PAGE -6

This Court has previously held that an alien is not subject to INA § 241 until the removal period begins. *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004). This Court recognized "that courts have issued published decisions that reach different conclusions regarding whether detention shifts from INA § 236 to INA § 241 when the order of removal becomes 'final' or rather when the 'removal period begins.'" *Id*. at 1223 (citing *De La Teja v. United States*, 321 F.3d 1357, 1362-63 (11th Cir. 2003); *Clavis v. Ashcroft*, 281 F. Supp. 2d 490, 493 (E.D.N.Y. 2003); *Milbin v. Ashcroft*, 293 F. Supp. 2d 158, 161 (D. Conn. 2003)). This Court concluded that the removal period begins on the *latest* of the following: the "date the order of removal becomes administratively final" or "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order." INA § 241(a)(1)(B). Accordingly, where an alien's removal order has been stayed by the Ninth Circuit pending its review of the BIA's decision, the "removal period" has not yet commenced, and the alien is detained pursuant to INA § 236. *Id*. at 1224.

Respondents point out and petitioner acknowledges, however, that unlike *Quezada-Bucio*, the Ninth Circuit's initial stay of removal ended as a result of the dismissal of petitioner's appeal, and the stay of removal was reinstated when petitioner's appeal was reinstated. Respondents argue that the removal period had begun but was suspended pursuant to INA § 241(a)(1)(C). INA § 241(a)(1)(C) provides that:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C). According to respondents, petitioner's detention is controlled by § 241, not § 236.

Owing to deficiencies in the text of the statute, petitioner does not fall squarely into either INA § 236 or INA § 241. In any event, the Court need not reach the merits of whether petitioner is detained under § 236 or § 241 because the Court retains habeas jurisdiction under either provision to review challenges to detention arising from statutory or constitutional violations.

REPORT AND RECOMMENDATION
PAGE -7

(Dkt. #9 at 14); *see Zadvydas v. Davis,* 533 U.S. 678, 688, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001)(holding that habeas proceedings remain available as a forum for statutory and constitutional challenges to post-removal period detention); *Quezada-Bucio*, 317 F. Supp. 2d at 1227 (holding that INA § 236 does not bar habeas review of statutory or constitutional challenges to detention)(citing *Demore v. Kim*, 538 U.S. 510, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003)). Respondents argue that this Court lacks jurisdiction because the discretionary decision to detain petitioner without bond is not subject to judicial review under INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii).[2] However, petitioner does not seek review of the Attorney General's exercise of discretion, but raises a constitutional challenge to her continued detention by the Attorney General without a bail hearing. *See id.* Accordingly, the Court retains jurisdiction to review petitioner's constitutional claim that she is entitled as a matter of due process to a bond hearing by a neutral adjudicator.

C.     Procedural Due Process.

Petitioner argues that she is entitled as a matter of due process to a bond hearing before a neutral adjudicator, such as this Court or an Immigration Judge. In this case, petitioner has not had a bond hearing before a neutral adjudicator. Rather, the ICE Field Office Director, at petitioner's request, issued a written determination denying petitioner's request for release. Petitioner argues that the facts in this case demonstrate the need for a neutral adjudicator, rather than the official whose duty it is to remove petitioner from the United States.

The Court agrees that petitioner's due process rights have been violated by ICE's failure to provide her with an individualized bond hearing. *See Morisath v. Smith*, 988 F. Supp. 1333,

---

[2] "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review – . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subsection to be in the discretion of the Attorney General or the Department of Homeland Security . . ." INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii).

REPORT AND RECOMMENDATION
PAGE -8

01   1340 (W.D. Wash. 1997)(citing *St. John v. McElroy*, 917 F. Supp. 243, 248 (S.D.N.Y. 1996);

02   *Caballero v. Caplinger*, 914 F. Supp. 1374, 1378 (E.D. La. 1996); *Kellman v. District Director*,

03   750 F. Supp. 625 (S.D.N.Y. 1990); *Paxton v. INS*, 745 F. Supp. 1261, 1265 (E.D. Mich. 1990);

04   *Agunobi v. Thornburgh*, 745 F. Supp. 533 (N.D. Ill. 1990); *Leader v. Blackman*, 744 F. Supp.

05   500 (S.D.N.Y. 1990)); *see also Morales-Izquierdo v. Johnston*, Case No. C03-89Z (W.D. Wash);

06   *Felix v. Ashcroft*, Case No. 02-2330L (W.D. Wash).  Furthermore, it is not enough that the ICE

07   Field Office Director has provided a written decision denying petitioner's release on bond.  In

08   *Morisath*, the Court determined that a "written decision [by the District Director] . . . is

09   inadequate to satisfy due process." *Morisath*, 988 F. Supp. at 1340.  As the Court explained in

10   *St. John*, "due process requires . . .  consideration of whether [petitioner], viewed as an

11   individual, presents a risk to abscond and a threat to the community's safety." *St. John*, 917 F.

12   Supp. at 238.  Accordingly, the Court finds that to satisfy the requirements of due process,

13   petitioner is entitled to an individualized bond hearing before a neutral adjudicator, not just a

14   written decision rendered by the ICE Field Office Director, at which she can attempt to show that

15   she does not pose a flight risk or a danger to the community.

## IV.  CONCLUSION

16

17          For the foregoing reasons, I find that petitioner's case raises serious legal questions and

18   the balance of hardship tips sharply in petitioner's favor. *Los Angeles Mem'l Coliseum Comm'n,*

19   634 F.2d at 1201.  Accordingly, I recommend that petitioner's motion for preliminary injunction

20   (Dkt. #2) be GRANTED.  A proposed Order accompanies this Report and Recommendation.

21          DATED this 3rd day of March, 2006.

22

23

24

25   _____
     MONICA J. BENTON
26   United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -9